DEPARTMENT OF TAXATION, Appellant, vs. BELLE CITY MALLEABLE IRON COMPANY, Respondent.

*November 8—December 5, 1950.*

For the appellant there were briefs by the *Attorney General, Harold H. Persons* and *E. Weston Wood,* assistant attorneys general, and oral argument by *Mr. Persons* and *Mr. Wood.*

For the respondent there was a brief by *Raymond I. Geraldson* and *Ray J. Schoonhoven,* attorneys, and *Seyfarth, Shaw & Fairweather* of counsel, all of Chicago, Illinois, and oral argument by *Mr. Geraldson.*

BROWN, J. The facts themselves are not in dispute though the conclusions to be drawn from them are. Those which we consider material will be referred to in the opinion. Respondent has stated the board's action and the reason for it as follows:

"The Wisconsin board of tax appeals determined ·that respondent's employees and their families were directly benefited by respondent's subscription to the hospital fund; that thereby a better employer-employee relationship was effected; that the $50,000 subscription was an ordinary and necessary business expense; and that that expense was incurred in the fiscal year ending June 30, 1945.

"The circuit court for Dane county, Judge HERMAN W. SACHTJEN presiding, affirmed the board's findings and decision on all points."

The crucial question, though many subsidiary ones are also raised, is whether this pledge is a business expense or a charitable contribution under the statute. This is a conclusion of law and we consider that in holding it to be an ordinary and necessary business expense the learned board of tax appeals and circuit court erroneously interpreted and misapplied the provisions of sec. 71.03, Stats. 1945.

In the city of Racine there was a serious lack of hospital facilities to serve a community of over sixty-seven thousand

persons. Fifty-seven companies engaged in business in the city, employing approximately twenty-two thousand seven hundred men and women and comprising substantially all its industry. Nearly all of the companies had group hospitalization plans covering the employees and their families. The respondent shared with its employees the cost of the plan in effect at its plant. Since the city's hospitals were inadequate, applicants, including persons employed by the respondent, met delay in securing hospital service and dissatisfaction was expressed, though not officially or by concerted protest. The Manufacturers' Association, to which most of the employers belonged, decided to do something about it and determined to raise about $1,000,000 for hospital improvement. A fund was established to be disbursed by trustees, who negotiated with the hospitals for the application of the money to be raised. The soliciting committee asked for this company's subscription in the following manner:

"This solicitation for the Racine Manufacturers' Hospital Fund is for the purpose of raising approximately $1,000,000 for the betterment of Racine's hospitals. Of this amount, $200,000 is to be used to improve the facilities of St. Mary's Hospital and the balance for new buildings and facilities for St. Luke's Hospital. There will result two well-equipped hospitals of nearly equal size.

"Considering that hospitalization plans among the members of the industry group shown by the attached list take in nearly all of the city's industrial employment, we believe that the employers themselves, without other help, would like to provide the funds for the hospital betterment as a gift to the community of which their employees constitute such a large and important part. The number of employees in this group totals about twenty-two thousand six hundred, so that if each employer is to do his share in raising the $1,000,000, it involves a donation of approximately $45 for each employee on his payroll.

"The attached list is from the record of the last Community Chest welfare drive and shows the employees reported at that

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

time and the respective prorata shares of the Racine Manufacturers' Hospital Fund. Your committee realizes there may be some companies which are not able to assume their indicated share and that perhaps the employment figure in some cases does not reflect the true picture. Consequently we have to rely on those more fortunately situated to do more than their share to make up what would otherwise result in a deficit. You will note that subscriptions can be made payable over more than one year.

"We hope you can join us in this project and ask that you please give it your consideration. ·

"Racine Manufacturers' Hospital Fund Committee"

To this solicitation respondent, employing one thousand twenty-three persons, replied as follows:

"Subscription

"Date June 19, 1945

"For value received we pledge to the Racine Manufacturers' Hospital Fund the sum of fifty thousand dollars $50,000 for payment before July 1, 1945, and in any event before June 1, 1947.

| "(This subscription is made | Belle City Malleable |
| subject to it being a proper | Iron Co. |
| deduction for federal and state | |
| income purposes.) | "By C. S. Anderson, |
| | "Pres." |

There is no evidence whatever that even one of respondent's employees for himself or his family actually received hospitalization after the subscription was made and we do not trace into the record the direct benefit which the board and respondent say came to them, although the decision need not rest on so narrow a ground.

It is significant that the employers were asked to make "a gift to the community" and there was no provision that the employees of subscribers, or their families, would fare any differently from the general public in the enjoyment of the

improvement which the subscription procured. Such benefit as did accrue to respondent's employees was that common to the entire population as the result of the "gift to the community." It is apparent, therefore, that respondent starts under a serious handicap in construing its subscription as an ordinary and necessary business expense rather than as a charitable contribution. Respondent submits that the pledge comes under sec. 71.03 (2), Stats., because its motives were mercenary and it expected a return for its subscription in improved labor relations and increased employee efficiency, while "a charitable contribution is a voluntary transfer of property by one person to another without consideration and without thought or expectation of recompense, reward, or private gain. Its motivation is benevolent, not mercenary. It involves the concept of the sacrifice of self for others, not the *quid pro quo* of the market place." So improvident a disposition of corporate assets, of course, is one which officers and directors are not empowered to make. 19 C. J. S., Corporations, p. 125, sec. 768; 2 Fletcher, Cyc. Corp. (perm. ed.), p. 408, sec. 520; *Parrott v. Noel* (D. C. 1925), 8 Fed. (2d) 368. It cannot be supposed that expenditures which they cannot make without perpetrating a wrong upon their stockholders are those for which the legislature has allowed tax credit; nor is there anything left for sec. 71.03 (7) to do if contributions made in the hope of ultimate benefit to the business are cared for by sec. 71.03 (2). *State ex rel. Stern Milling Co. v. Tax Comm.* (1920), 170 Wis. 506, 175 N. W. 931, is in point here,—an action in which the taxpayer tried unsuccessfully to class federal taxes as business expenses although there was a special subdivision for taxes in the statute. The court said (p. 511):

"If the legislature considered that the item of taxes falls under the general head of 'other ordinary and necessary expenses,' then sub. (d) [which deals with deduction for taxes] is entirely superfluous. It is apparent that the legislature did not so consider it, . . ."

It seems to us that sec. 71.03 (7), Stats., is expressly designed to give limited tax credit to gifts like the present one, which the corporation officers make as a matter of good business in the hope that the resulting esteem of third parties will be reflected in increased profits, although there is no direct, tangible return in material, services, or trade moving to the donor, and that which the contribution directly produces is enjoyed in common by the public or a considerable class regardless of its relationship to the contributor.

Respondent has referred us to a number of decisions of the United States courts where payments of money under circumstances not very different from those at hand were recognized under the federal income tax law as business expense. However, when those cases arose, that law made no separate allowance for charitable gifts and the payments could be deducted as business expense or not at all. Like the state of Wisconsin, the United States now has an income tax law which provides special recognition and treatment of charitable contributions and the authority of those cases on this point is impaired. The record herein shows that the United States commissioner of internal revenue, himself, does not regard them as authority for, on a very comprehensive statement of facts which included the material ones relied on here by respondent, he ruled that contributions to this fund could be treated only as charitable contributions.

It has been frequently and, we think, correctly held that in order for a contribution to be deductible as an ordinary and necessary business expense there must not only be a business motivation but there must also be a direct relationship between the expense and the anticipated return to the corporation, in contrast to a charitable contribution which although motivated by reasons of good business need not be made in contemplation of any immediate and particular return in direct proportion to the amount of the contribution. It is not the broad motivation for the contribution which determines

its character as a business expense, but rather the anticipated return to the donor resulting from the contribution. *Commissioner of Internal Rev. v. F. & R. Lazarus & Co.* (6th Cir. 1939), 101 Fed. (2d) 728; *Old Mission Portland Cement Co. v. Helvering* (1934), 293 U. S. 289, 55 Sup. Ct. 158, 79 L. Ed. 367; *Helvering v. Evening Star Newspaper Co.* (4th Cir. 1935), 78 Fed. (2d) 604.

We conclude that, as a matter of law, the uncertain and indefinite business benefits which respondent hoped or expected would flow from its contribution to the enlargement of the hospitals are too nebulous to be included within the reasonable limits of sec. 71.03 (2), Stats.

As we said in the beginning, many collateral issues have been ably argued but are of importance only if the subscription is held to be an ordinary and necessary business expense. Since we conclude it is not we will not extend the opinion by discussing them.

The Department of Taxation concedes the deductibility of the contribution under sec. 71.03 (7), Stats., and no question is before us as to whether it meets the requirements even of that subdivision, though the board of tax appeals questioned the sufficiency of the evidence in this respect.

*By the Court.*—Judgment reversed and cause remanded to the circuit court with directions to enter judgment reversing the decision and order of the board of tax appeals and directing said board to enter an order affirming the denial of respondent's application for abatement.